UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FOREMOST INSURANCE COMPANY, : | |
|         Plaintiff, : | |
| : | |
|       v. : | No. 5:17-cv-02843 |
| : | |
| NOSAM, LLC; CATHY KOPICZ;[1] : | |
| GINA SYLVESTRE; JEFFREY LEBRUN; : | |
| and BARBARA LEBRUN, : | |
|         Defendants. : | |

**O P I N I O N**
**Plaintiff's Motion for Summary Judgment, ECF No. 22 – Granted**

**Joseph F. Leeson, Jr.**                                                                **November 5, 2018**
**United States District Judge**

       This declaratory judgment action arises out of a personal injury complaint filed in the Berks County Court of Common Pleas, in which it is alleged that Gina Sylvestre, Barbara LeBrun, and Jeffrey LeBrun suffered carbon monoxide poisoning at their residence due to the negligence of Nosam, LLC, the owner and landlord of the property, for failing to ensure that the furnace was safe. Nosam sought a defense and indemnification from Foremost Insurance Company pursuant to its insurance policy. Foremost seeks a declaration from this Court stating that it does not owe a duty to defend, nor a duty to indemnify, Nosam in the state court action based on a Pollution Exclusion in the Policy. Foremost has filed a Motion for Summary Judgment. For the reasons discussed herein, Foremost has no duty to defend or indemnify because the Pollutant Exclusion bars coverage.

---

[1]     Cathy Kopicz (spelled Cathy "Copicz" in the state case) was terminated as a party to this action on August 23, 2017, because she was dismissed from the state case.

## I. FACTS[2]

In May 2017, Gina Sylvestre and her two children, Jeffrey and Barbara LeBrun ("the underlying plaintiffs"), sued Nosam[3] in the Court of Common Pleas Berks County, Pennsylvania ("underlying action"). The complaint filed in the underlying action (the "underlying complaint") alleges the following facts: Nosam was the owner and landlord of a residential property at 151 West Douglass Street in Reading, Pennsylvania, which was occupied by the underlying plaintiffs. On December 9, 2015, Barbara LeBrun awoke from a nap feeling dizzy. She attempted to go to her mother's room, but collapsed. Barbara called to her brother Jeffery LeBrun, who found his sister at the foot of the stairs. Jeffery then checked on his mother Gina Sylvestre to find her unconscious. Jeffery drove them to the hospital, where all three were diagnosed as suffering carbon monoxide poisoning. The underlying complaint alleges that it was determined that the furnace in the basement of the house, which was turned on earlier in the day due to cold weather, was emitting a dangerous amount of carbon monoxide and was unsafe to be used. In an amended complaint filed in the underlying action,[4] it is alleged that the neighboring chimney collapsed and fell into the underlying plaintiffs' chimney. This allegedly caused a blockage in the heating apparatus at the underlying plaintiffs' residence, causing or contributing

---

[2] The undisputed facts are taken from Foremost's Statement of Undisputed Material Facts and the response thereto, *compare* Stmt Facts ¶¶ 1-17, ECF No. 22-2, *with* Resp. ¶¶ 1-17, ECF No. 23, unless otherwise noted.
[3] Cathy Kopicz (spelled "Copicz" in the state case) was also named as a defendant in the underlying action. But, because she has been dismissed from the instant action, any facts pertaining to her are not "material" and are therefore eliminated from this Opinion.
[4] The amended complaint names two new parties, Dolores Miller and God's Worship & Praise Ministries, Inc., who owned the property that abutted the residence of the underlying plaintiffs. Because neither of these defendants are parties to the instant action, facts pertaining to them are not "material" and are therefore eliminated from this Opinion.

to the emission of carbon monoxide. The proper functioning of the furnace and heating apparatus is alleged to be the legal responsibility of Nosam.

Nosam had an insurance policy with Foremost for the premises at 151 West Douglass Street, which was in effect from April 20, 2015, through April 20, 2016. The Policy provides Nosam coverage "for damages because of bodily injury or property damage caused by an accident on [the] premises." Policy at 9, Sec. II(F), ECF No. 22-7. The Policy also contains the following exclusion: "We will not pay for bodily injury or property damage . . . [a]rising out of the actual, alleged or threatened discharge, dispersal, release, escape of, or the ingestion, inhalation or absorption of pollutants." Policy at 10, Sec. II(F)(4), (G)(4) (hereinafter the "Pollutant Exclusion"). "Pollutant" is defined in the Policy to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, metals, lead paint components and compounds, and waste. . . . However, irritants and contaminants released by an accidental fire on your premises are not a pollutant." Policy at 2, Definitions, ECF No. 22-6.

Nosam sought a defense and indemnification from Foremost under the Policy for the underlying action. Foremost thereafter filed the instant declaratory judgment action seeking a declaration from this Court that it has no duty to defend or indemnify Nosam based on the Pollutant Exclusion. Compl., ECF No. 1. Nosam answered, asserting that although the facts pled in the underlying lawsuit would fall under the Exclusion, such facts are contested and "some kind of a fire would make more logical sense." Nosam Answer ¶ 22, ECF No. 7. The underlying plaintiffs also answered, asserting that the Exclusion does not apply because the carbon monoxide was released by an accidental fire, which is an exception to the Exclusion. Sylvestre Answer ¶ 22, ECF No. 10.

Foremost has filed a Motion for Summary Judgment, arguing that the Pollutant Exclusion bars coverage, that there are no allegations in the underlying complaints of any fire, and that, regardless, there was no "accidental fire" as that term is used in the Policy. Mot., ECF No. 22. Nosam did not respond to the summary judgment motion. The underlying plaintiffs did respond in opposition to the motion, asserting that the Pollutant Exclusion does not apply because the carbon monoxide was released by an accidental fire. Resp., ECF No. 23. They allege that they were unaware the heating system had been improperly converted to gas and that the gas fire that was ignited when the furnace was turned on was unintended and unexpected, such that the carbon monoxide released was caused by an accidental fire.

In their response to Foremost's Motion for Summary Judgment, the underlying plaintiffs also present the work order/invoice and deposition testimony of Richard East, a contractor specializing in residential heating systems. *See* Invoice, Ex. C, ECF No. 23-6; East Dep., Ex. D, ECF No. 23-7. According to both, the heating system at 151 West Douglass Street had been converted from an oil heater to a gas heater. *See* Invoice; East Dep. 6:17-21, 7:19-22. However, no chimney liner was installed after the conversion to ensure that the chimney was the right size for the amount of heat produced, as is required. *Id.* at 8:21-24. Mr. East explained at his deposition how the heating system at 151 West Douglass Street works. *See id.* at 10:6 - 11:14. He stated: there is a mounted burner inside a sealed unit that releases natural gas when it senses that the pilot light is on. *Id.* at 11:4-14. The gas ignites, but because the unit is sealed, there are no exposed flames. *Id.* at 11:4-10. The excess gas goes up and out the chimney. *Id.* at 10:14-17. Mr. East testified that an oil heater burns hotter than a gas heater, and when a chimney is not sized properly, the condensation from excess gas will eat away at the brick and mortar and eventually fall in and collapse. *Id.* at 8:2-17. He testified that the burned gas produces carbon

monoxide and that a chimney collapse could cause carbon monoxide to build up in a home. *Id.* at 11:19 - 12:15. Mr. East testified that an oiling burning system can also produce carbon monoxide. *Id.* at 12:16-19.

Foremost replied, arguing that the underlying plaintiffs improperly rely on evidence outside of the underlying complaints in contradiction of the four corners rule, and suggesting that their interpretation of an "accidental fire" is unreasonable. Reply, ECF No. 24.

## II. STANDARDS OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial,

because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### B. Contract Interpretation- Pennsylvania Law

"An insurer's obligation to provide a defense for claims asserted against its insured is contractual, and the language of the policy will determine whether an insurer has a duty to defend." *Colony Ins. Co. v. Mid-Atlantic Youth Servs. Corp.*, 485 F. App'x 536, 538 (3d Cir. 2012). "Under Pennsylvania law, 'the interpretation of a contract of insurance is a matter of law for the courts to decide.'" *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390-91 (3d Cir. 2012) (quoting *Paylor v. Hartford Ins. Co.*, 640 A.2d 1234, 1235 (Pa. 1994)). In interpreting an insurance contract, the court must ascertain the intent of the parties from the language of the policy. *See id.* When the policy language is clear and unambiguous, the court will give effect to that language. *Id.* But, when the policy language is ambiguous, it must "'be construed in favor of the insured and against the insurer, the drafter of the agreement.'" *Squires*, 667 F.3d at 391 (quoting *Dorohovich v. W. Am. Ins. Co.*, 589 A.2d 252, 256 (Pa. Super. Ct. 1991)). "Ambiguity exists if the contract language is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Whitmore v. Liberty Mut. Fire Ins. Co.*, No. 07-5162, 2008 U.S. Dist. LEXIS 76049, at *9 (E.D. Pa. Sep. 30, 2008) (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)). "The court should not consider isolated individual terms but should instead consider the entire contractual provision to determine the parties' intent." *Robinson v. Allstate Prop. & Cas. Ins. Co.*, 306 F. Supp. 3d 672, 675 (E.D. Pa. 2018).

An insurer usually bears the burden of proving an exclusion to coverage, but the insured bears the burden of proving an exception to that exclusion. *See N. Ins. Co. v. Aardvark Assocs.*, 942 F.2d 189, 194-95 (3d Cir. 1991). "If the insured is successful in demonstrating that coverage is not necessarily excluded by the facts averred in the complaint, the insurer is required to defend the underlying suit." *Air Prods. & Chems. v. Hartford Accident & Indem. Co.*, 25 F.3d 177, 180 (3d Cir. 1994).

## III. ANALYSIS

### A. Standing

Initially, this Court raises the issue of standing sua sponte. As will be discussed in greater detail below, because Foremost contends that the Pollutant Exclusion bars coverage, the burden shifts to the insured to either rebut this showing or to show that an exception to the exclusion applies. However, the insured, Nosam, did not respond to the Motion for Summary Judgment, or to the Statement of Undisputed Material Facts. Rather, the underlying plaintiffs have responded and argued that the Pollutant Exclusion does not apply because carbon monoxide was released by an accidental fire, which is an exception to the definition of a pollutant.

The Third Circuit Court of Appeals[5] has held that it is jurisprudentially sound, as well as realistic, to conclude that an injured party has an independent right to be heard because "'in many of the liability insurance cases, the most real dispute is between the injured third party and the insurance company, not between the injured and an oftentimes impecunious insured.'" *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 354-55 (3d Cir. 1986) (quoting 6A J. Moore, Moore's Federal Practice para. 57.19). *See also Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311,

---

[5] "[S]tanding in federal court is a question of federal law, not state law." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013).

317-319 (3d Cir. 2011) (same). Thus, "[i]n terms of fairness, the injured party should be able to present its case upon the ultimate issues, even if the insured does not choose to participate." *Rauscher*, 807 F.2d at 355. Consequently, this Court finds that the underlying plaintiffs have standing to contest the Motion for Summary Judgment and considers their arguments and evidence in determining whether Foremost has a duty to defend and to indemnify Nosam.[6]

### B. This Court is not bound by the four corners rule.

An insurer has a duty to defend a claim against its insured "'unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy.'" *ACE Capital Ltd. v. Morgan Waldon Ins. Mgmt., LLC*, 832 F. Supp. 2d 554, 566-67 (W.D. Pa. 2011) (quoting *Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1094 (Pa. 1997)). Generally, "[u]nder Pennsylvania law, the duty to defend is determined solely by the allegations contained within the four corners of the complaint." *Mid-Atlantic Youth Servs. Corp.*, 485 F. App'x at 538. *See also Nat'l Fire Ins. Co. v. Robinson Fans Holdings, Inc.*, No. 10-1054, 2011 U.S. Dist. LEXIS 77367, at *23-24 (W.D. Pa. July 18, 2011) (refusing to consider affidavits and briefs submitted in connection with the dismissal motions because "the duty to defend must be measured solely on the basis of the four corners of the complaint against the insured"). But in cases like the one here, where the insured bears the burden of showing that an exception to an exclusion applies, the court may consider extrinsic evidence to determine whether there is a duty to defend. *See Air Prods. & Chems.*, 25 F.3d at 180.

---

[6] Additionally, the underlying plaintiffs were named as defendants in the instant action by Foremost. They therefore have a right to defend themselves. *See Carrasquillo v. Kelly*, No. 17-4887, 2018 U.S. Dist. LEXIS 64221, at *5 (E.D. Pa. Apr. 17, 2018) (explaining that "an injured third party has standing to defend itself in a declaratory judgment action brought by an insurer against its insured and the injured third party").

Extrinsic evidence may be used to either: (1) rebut the insurer's contention that a policy exclusion bars coverage, or (2) to show that an exception to an exclusion does not apply. *See Unitrin Direct Ins. Co. v. Esposito*, 280 F. Supp. 3d 666, 670-71 (E.D. Pa. 2017) (citing *Air Prods. & Chems., Inc.*, 25 F.3d at 180). This "admittedly favors the insured by denying the insurer the ability to prove a lack of coverage under an exclusion except by reference to the language of the complaint, while permitting an insured to prove by extrinsic evidence (i.e., evidence beyond the allegations of the complaint) that an exception to an exclusion is applicable, such that coverage exists." *Liberty Mut. Fire Ins. Co. v. Skorochod*, No. 15-cv-04365-RAL, 2018 U.S. Dist. LEXIS 8626, at *8 (E.D. Pa. Jan. 19, 2018) (citing *Air Prods. & Chems., Inc.*, 25 F.3d at 180 ("This arguably one-sided rule is consistent with general insurance law principles and, in particular, the Pennsylvania rule that requires only a 'potential' of coverage of the allegations in the complaint for the duty to defend to be triggered.")). Accordingly, "[i]f the language of the complaint alleges facts that would trigger an exclusion to coverage, but does not allege facts that would make applicable an exception to the exclusion, the insureds may introduce extrinsic evidence to prove an exception to a policy exclusion." *Id.* at *12.

Thus, this Court is not confined to the four corners of the underlying complaints in determining whether the accidental fire exception to the Pollutant Exclusion applies.

### C. The Pollutant Exclusion bars coverage.

It is undisputed that at the time the underlying plaintiffs suffered carbon monoxide poisoning, Nosam had an insurance policy with Foremost for the premises rented by the underlying plaintiffs. It is also undisputed that the underlying plaintiffs suffered bodily injury (carbon monoxide poisoning) on the premises. Under the Pollutant Exclusion, however, Foremost "will not pay for bodily injury or property damage . . . [a]rising out of the actual,

alleged or threatened discharge, dispersal, release, escape of, or the ingestion, inhalation or absorption of pollutants." Policy at 10, Sec. II(F)(4), (G)(4). The language of this exclusion is clear and unambiguous, and is therefore given effect. *See Squires*, 667 F.3d at 390-91; *Paylor*, 640 A.2d at 1235. Aside from the accidental fire exception, the parties also do not dispute that carbon monoxide is a "pollutant." *See also Reliance Ins. Co. v. VE Corp.*, No. 95-538, 1995 U.S. Dist. LEXIS 13872, at *21-22 (E.D. Pa. Sep. 19, 1995) (holding that "carbon monoxide is a pollutant").[7] Accordingly, Foremost has met its burden of establishing that the Pollutant Exclusion bars coverage. *See Barg v. Encompass Home & Auto Ins. Co.*, No. 16-6049, 2018 U.S. Dist. LEXIS 8951, at *1 (E.D. Pa. Jan. 19, 2018) (finding that the pollutant exclusion barred coverage for loss caused from heating oil that leaked from the insured's furnace); *VE Corp.*, 1995 U.S. Dist. LEXIS 13872, at *21-24 (holding that the pollutant exclusion barred coverage for claims of bodily injury arising out of exposure to carbon monoxide released from a direct-fire steam generator used to cure and strengthen concrete, which emitted carbon monoxide as part of its normal operation).

The burden therefore shifts to the underlying plaintiffs "to show either that the exclusion does not apply or that an exception to the exclusion applies." *Doherty v. Allstate Indem. Co.*, No. 15-05165, 2017 U.S. Dist. LEXIS 52795, at *38 (E.D. Pa. Apr. 6, 2017).

### D. The "accidental fire" exception does not apply.

The Policy excepts from the definition of "pollutant" irritants and contaminants released by an "accidental fire." Policy 2. The underlying plaintiffs assert that the carbon monoxide poisoning they suffered on December 9, 2015, was caused by an accidental fire, as the nature of

---

[7] The definition of pollutants in the insurance policy in *Reliance* contained identical language, apart from the accidental fire exception, to the one at issue in the instant action. *Reliance Ins. Co.*, 1995 U.S. Dist. LEXIS 13872, at *4.

10
110218

the fire was unexpected and unintended. They contend that because they did not know about the heating system's conversion to gas, they were unaware they were using gas when they turned on the furnace. The underlying plaintiffs further allege that there is no indication the conversion was performed with the intent to cause a chimney collapse or to cause a dangerous release of carbon monoxide. They argue that because their interpretation of the term "accidental fire" is reasonable, the term is ambiguous and must be construed in favor of the insured.

In deciding whether contract terms are ambiguous, the question is not to be resolved in a vacuum. *See Whitmore*, 2008 U.S. Dist. LEXIS 76049, at \*9 (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)). "Words of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense." *Madison Constr. Co.*, 735 A.2d at 108. The court should not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Id.* at 106.

In Pennsylvania, "the term 'accident' within insurance polices [sic] refers to an unexpected and undesirable event occurring unintentionally. . . ." *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 292 (Pa. 2007). "The key term in the ordinary definition of 'accident' is 'unexpected.'" *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 898 (Pa. 2006) (quoting II New College Dictionary 6 (2001)). "'Accidental' is an adjective meaning happening by chance, unexpectedly, not in the usual course of things." *McMahon v. State Farm Fire & Cas. Co.*, No. 06-3408, 2007 U.S. Dist. LEXIS 34137, at \*10 (E.D. Pa. May 8, 2007) (quoting Black's Law Dictionary 945 (6th ed. 1990)).

Here, the term "accidental" is used in the Policy as an adjective to describe the type of fire. However, on December 9, 2015, the only fire at the premises was not accidental. Although

the underlying plaintiffs contend that they did not know the heating system had been converted to gas, there is no suggestion they did not knowingly and intentionally start the December 9, 2015 fire by turning on the furnace. There is also no suggestion that any flames from, or any part of, this controlled fire extended outside the sealed unit where it was designed to burn. Further, although the chimney collapse may have contributed to the buildup of carbon monoxide inside the residence, the unexpected collapse did not cause the fire.[8] The fire, regardless of whether it was ignited by gas or oil,[9] did not happen by chance or unexpectedly and was therefore not "accidental."

Although the buildup of carbon monoxide was accidental,[10] it was not "released by an accidental fire" and the underlying plaintiffs' attempt to conflate the two requires a strained interpretation of that term. *See Madison Constr. Co.*, 735 A.2d at 106 (holding that a court should not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity"). This Court finds that the term "accidental fire" as used in the Policy is not ambiguous.

Moreover, even assuming arguendo that the term is ambiguous, the reasonable expectations doctrine bars coverage. "The doctrine of reasonable expectations . . . requires examination of the reasonable expectations of the insured, when resolving an ambiguity in an insurance contract." *Devcon Int'l Corp. v. Reliance Ins. Co.*, 609 F.3d 214, 222 (3d Cir. 2010). *See also Heri Krupa, Inc. v. Tower Grp. Cos.*, No. 12-4386, 2013 U.S. Dist. LEXIS 37495, at

---

[8] For this reason, whether the conversion of the heating system was performed with the intent to cause a chimney collapse has no bearing on whether the fire happened by chance.
[9] Both a gas fire and an oil fire produce carbon monoxide. *See* East Dep. 12:16-19.
[10] This Court agrees with the underlying plaintiffs that there is no indication the conversion of the heating system was performed with the intent to cause a dangerous release of carbon monoxide. However, this fact is not relevant to determining whether the fire (as opposed to the release of carbon monoxide) on December 9, 2015, was accidental.

*19 (E.D. Pa. Mar. 18, 2013) ("Under Pennsylvania law, even if the terms of the insurance contract are clear and unambiguous, the insured's reasonable expectations may prevail over the express terms of the contract.").

The underlying plaintiffs argue that the Pollutant Exclusion does not apply because when they turned on the furnace, unaware that the heating system had been converted to gas, they started an accidental fire. If this logic is accepted, then the underlying plaintiffs are essentially conceding that if the heating system had not been improperly converted and the oil burning furnace emitted a dangerous amount of carbon monoxide, the Pollutant Exclusion would bar coverage for any resulting loss. It is unlikely that the parties to the Policy would have intended such contradictory results.[11] *See Squires*, 667 F.3d at 390-91 (holding that the court must ascertain the intent of the parties from the language of the policy).

For all these reasons, the underlying plaintiffs have failed to show either that the Pollutant Exclusion does not apply or that an exception to the definition of pollutant does apply. *See VE Corp.*, 1995 U.S. Dist. LEXIS 13872, at *22-23 (concluding that carbon monoxide is a pollutant) (citing *Bernhardt v. Hartford Fire Ins. Co.*, 648 A.2d 1047, 1047-48 (Md. 1994) (concluding that the landlord had no duty to defend claims raised by his tenants after they suffered carbon monoxide poisoning as a result of a defective and improperly maintained furnace)).[12] Consequently, the Pollutant Exclusion bars coverage and Foremost has no duty to defend the underlying action.

---

[11] The parties' intent not to cover the loss to the underlying plaintiffs is also evidenced from the fact that the Policy excludes from coverage loss caused by "Smoke from fireplaces or other auxiliary heating devices." *See* Policy at 5, Sec. I(8).

[12] The pollutant exclusion in *Bernhardt* did not apply to bodily injury "caused by heat, smoke or fumes from a hostile fire[, which] means [a fire] which becomes uncontrollable or breaks out from where it was intended to be." *Bernhardt*, 648 A.2d at 1048. However, the court found that the injuries were not the result of a hostile fire because there was "simply no evidence

Because Foremost has no duty to defend, it also has no duty to indemnify. *See Haines v. State Auto Prop. & Cas. Ins. Co.,* 417 F. App'x 151, 152-53 (3d Cir. 2011) (holding that because an "insurer's duty to defend is separate from, and broader than, the duty to indemnify, if the insurer 'does not have a duty to defend [the insured], neither does it have the duty to indemnify'" (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc.*, 908 A.2d at 896 n.7).

## IV. CONCLUSION

Nosam had an insurance policy with Foremost covering damages for bodily injury on the premises rented by the underlying plaintiffs. During the length of this Policy, the underlying plaintiffs suffered carbon monoxide poisoning arising from Nosam's alleged negligence for failing to ensure that the heating system was safe. However, the Pollutant Exclusion in the Policy bars coverage. The underlying plaintiffs' argument that the carbon monoxide, which was emitted from the furnace, is excepted from the definition of pollutant because it resulted from an "accidental fire" is a strained interpretation of that term and contrary to the intent of the parties. They therefore failed to show that the Pollutant Exclusion does not bar coverage. Foremost has no duty to defend or to indemnify Nosam in the underlying action.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

or proffer that the fire in the furnace became 'uncontrollable' or '[broke] out from where it was intended to be'" despite the fact that the thermostat was set at a higher than normal level and there was a blockage of free air passage in the chimney flue. *Id.* at 1048-49.